MORGAN v. SEAMAN, Sheriff.

(Supreme Court, Appellate Division, Third Department. March 8, 1916.)

1. SHERIFFS AND CONSTABLES ⬤�ance138(1)—EXECUTION—NEGLIGENT DELAY—LIABILITY—BURDEN OF PROOF.

Negligence of a sheriff in not proceeding under an execution establishes prima facie his liability for the amount he was commanded by the execution to collect, and he has the burden of showing that the execution creditor was not damaged thereby.

[Ed. Note.—For other cases, see Sheriffs and Constables, Cent. Dig. § 290; Dec. Dig. ⬤➰138(1).]

2. SHERIFFS AND CONSTABLES ⬤➰138(1)—EXECUTION—NEGLIGENT DELAY—DAMAGES—EVIDENCE.

The fact, if established, that the execution debtor was insolvent when execution was given the sheriff, does not justify an inference, relieving the sheriff from liability, that, had the sheriff acted promptly, instead of negligently, bankruptcy proceedings would have been precipitated and hastened, so that the execution could not have been collected before bankruptcy proceedings; but this is a mere matter of conjecture.

[Ed. Note.—For other cases, see Sheriffs and Constables, Cent. Dig. § 290; Dec. Dig. ⬤➰138(1).]

Kellogg, P. J., and Lyon, J., dissenting.

Appeal from Trial Term, Broome County.

Action by Theodore B. Morgan, Jr., against Arthur M. Seaman, as late Sheriff of Broome County. From a judgment for plaintiff, on decision of the court, defendant appeals. Affirmed.

Argued before KELLOGG, P. J., and LYON, HOWARD, WOODWARD, and COCHRANE, JJ.

⬤➰For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Hinman, Howard & Kattell, of Binghamton (Archibald Howard, of Binghamton, of counsel), for appellant.

Wakelee, Thornall & Wright, of New York City (C. E. Thornall, of New York City, of counsel), for respondent.

COCHRANE, J. [1, 2] The opinion of the Presiding Justice holds that the defendant was negligent, and that he should have heeded the positive directions and instructions of the execution creditor. But it relieves him from the consequences of his negligence thus found because, had he proceeded with diligence as he was directed to do by the judgment creditor, the debtors might have invoked the aid of the Bankruptcy Law (Act Cong. July 1, 1898, c. 541, 30 Stat. 544). It has long been the policy of the law in this and other states that a diligent creditor is entitled to the fruits of his diligence. It is the duty of a sheriff to conserve and promote that right of the diligent creditor, rather than to nullify it by indifference or a desire to conserve the rights of an execution debtor, no matter how sincere the sheriff may be in his conviction that the judgment will ultimately be paid. The federal policy as expressed in the Bankruptcy Law recognizes equality among creditors, and is to that extent inconsistent with the state policy of preference to a diligent creditor. When a petition in bankruptcy is filed, the state policy must therefore yield to the federal policy. But until resort is made to the Bankruptcy Law the diligent creditor has a right to insist on the advantages secured by his diligence and the facilities afforded by the law for the collection of his execution, and the sheriff has no right to temporize with the debtor on the theory that he may or may not be solvent, and that a certain course of procedure is just as advantageous to the creditor as the course which the law contemplates. Particularly is this so where, as in this case, the judgment creditor was urging and insisting that the sheriff should proceed under the execution. It was not for the sheriff to say that a policy of dilatoriness and equivocation was best for the plaintiff, that if he followed the instructions of the latter bankruptcy might be precipitated, and that the matter was being handled according to the best interests of the plaintiff. His duty required positive action. Not only did the law enjoin this duty, but such was the positive instruction of the plaintiff.

It is impossible for any one to say that, had the sheriff acted with diligence and promptness, the bankruptcy of the judgment debtors would have been precipitated. It does not follow that because a man is insolvent he will go into bankruptcy. It does not follow that because the judgment debtors in this instance were insolvent when the sheriff received the execution in question such judgment debtors would have been forced into bankruptcy, or would have invoked the benefit of the Bankruptcy Act, if the sheriff had insisted promptly on enforcing the execution. Frequently men who are insolvent hope to tide over their insolvency; frequently they do not themselves realize their insolvency, although it exists; frequently other creditors deem it wise and expedient to come to the assistance of the crippled debtor for the purpose of keeping his affairs afloat for the time being in the hope of

improving conditions; frequently for various reasons, although insolvency exists, ·the time is not ripe to file a petition in bankruptcy. If we are at liberty to indulge in conjecture, my own conjecture would be that in this case suitable diligence on the part of the sheriff would have been rewarded by the payment of the execution in question, because everything indicates to my mind that either in the opinion of the judgment debtors or some of their creditors, who were standing back of them, the time was not yet ripe for filing a petition in bankruptcy, and that if the sheriff by diligent action had placed upon the judgment debtors and those who were assisting them the alternative of deciding between immediate bankruptcy and the payment of the plaintiff's execution the decision would have been in favor of the latter alternative. But whether that be so or not is a question which should not have been injected into this case by the negligence of the defendant. It is stated in the opinion of the Presiding Justice that:

"There is no evidence to indicate that if a levy had actually been made a sale could have taken place before a petition in bankruptcy was filed."

And again:

"The question presented is a mere question of probabilities, approaching somewhat near pure speculation, as to what would have happened if an earlier levy had been imminent."

My opinion is that, because it is a mere question of probabilities and "pure speculation," the evidence in no aspect of the case most favorable to the defendant is sufficient to relieve him from the negligence of which the opinion of the Presiding Justice convicts him. The negligence of the defendant establishes prima facie his liability for the amount which he was commanded by the execution to collect, and the burden is upon him to relieve himself from the consequences of his own negligence which he may do in mitigation of damages. Pach v. Gilbert, 124 N. Y. 612, 27 N. E. 391; Ledyard v. Jones, 7 N. Y. 550; Bank of Rome v. Curtiss, 1 Hill, 275. The effect of the opinion of the Presiding Justice is to relieve the defendant from this burden and throw it upon the plaintiff. If the trial court had found, as requested, that the judgment debtors at the time the sheriff received the execution were insolvent, it would not in my opinion help the defendant, because the evidence does not justify an inference that if the sheriff had acted promptly he would have precipitated the bankruptcy proceedings. As before stated, the sheriff by prompt action should have kept this question out of the case, and should not now be permitted to excuse his conceded negligence by raising a conjecture which but for his negligence would not exist. To permit him to do so is, in the language used in Ledyard v. Jones, supra, to allow "an unfaithful and defaulting officer to take advantage of his own wrong, a privilege which the law accords to no other person."

Giving to the defendant all the inferences to which he is entitled on this question, it does not appear that he could not have collected the execution. He has not sustained the burden which the law properly places upon him of showing that his negligence has not damaged the plaintiff. All the evidence pertinent to this question is in the posses-

sion of the defendant. It is not and cannot be claimed that the record on another trial can be substantially changed. In the very nature of things the question will always be one of "probabilities approaching somewhat near pure speculation as to what would have happened" if the sheriff had not been negligent. Another trial means merely another chance for the defendant to again speculate and conjecture "as to what would have happened" if he had done his duty, and all this at the expense of the plaintiff. I think the court should stop conjecturing and speculating and decide this case upon the evidence now before us, and which is necessarily substantially all which can ever be produced. I favor an affirmance of the judgment.

Judgment affirmed, with costs.

HOWARD and WOODWARD, JJ., concur.

JOHN M. KELLOGG, P. J. (dissenting). The finding of fact that the defendant was negligent in enforcing the plaintiff's execution is not against the evidence. The sheriff should have heeded the positive directions and instructions of the plaintiff. Root v. Wagner, 30 N. Y. 9, 86 Am. Dec. 348. With reasonable promptness the sheriff informed the debtors of the execution. They claimed that judgment by default had been entered by mistake of their representatives, and that they would have it opened, and they wanted nothing done upon it, as it would certainly be taken care of. They gave him to understand they had the money with the Trust Company. The debtors' attorneys, men of high standing, assured the sheriff that the execution would be taken care of, and that, if any disposition of the debtors' property was to be made, the sheriff would be notified, so that he could make a levy before that time. The debtors were apparently carrying on their large lumber business in the usual way, having some $30,000 worth of lumber in the yard free from incumbrances. The sheriff resided in the same city with the debtors and the Trust Company, and was apparently well acquainted with them. The Trust Company, the principal creditor and the banker of the debtors, assured the sheriff that the execution would be taken care of. He was also informed from time to time that if a levy was made it would precipitate other actions, with the result that bankruptcy would follow. The sheriff must be alert and active, and use reasonable diligence in collecting an execution. He must not, however, be unreasonably oppressive to a solvent business man, where he believes a levy is unnecessary, and all available information indicates that a levy would be oppressive. He is to act promptly, with vigilance, and is to be wise and reasonable. He must exercise a wise and reasonable judgment, unless directed otherwise by the execution creditor. The record indicates that the sheriff was pursuing a wise judgment and discretion with reference to the execution, and was not reasonably chargeable with a neglect of duty with reference to it until he disregarded the positive directions of the plaintiff's attorneys to make a levy, which directions we find in their letters to him of July 8th. The defendant, therefore, is liable to the plaintiff for any damages he sustained by reason of the fact that a

157 N.Y.S.—53

levy was not then made. Whether the plaintiff has in fact sustained any damage by reason of such neglect is a close question of fact.

The court refused to find as a fact that the debtors were insolvent when the execution was received and at all times thereafter, saying that it recalled no evidence to that effect. The debtors, therefore, evidently were considered as solvent, and the case was decided upon the theory that the sheriff, with an execution against solvent debtors, had held it from June 3d until July 22d without levy, in violation of the plaintiff's directions, during which time the debtors became insolvent. The case upon that theory was easy. This, however, is not such a case. Clearly the debtors were hopelessly insolvent when the execution was received, and a reasonable examination of their affairs would have shown that fact, although the sheriff was misled by the representations made to him. If a levy had been made on July 8th, sufficient time elapsed between that date and the date when the petition in bankruptcy was actually filed, July 24th, to enable him to make the money and pay it over to the plaintiff, in which case the plaintiff could hold it free from the bankruptcy proceedings. Clarke v. Larremore, 188 U. S. 486, 23 Sup. Ct. 363, 47 L. Ed. 555; In re Leech, 171 Fed. 622, 96 C. C. A. 424; Weitzel Case (D. C.)191 Fed. 463.

But the question necessarily arises, if an earlier levy had been made, is it probable that the petition in bankruptcy would have been filed earlier? Could the money have been made before the petition was filed? July 15th the attorney of the Trust Company informed the sheriff:

"If these people turned out to be all right, were good and solvent, that the Trust Company would take it, and we were investigating and trying to find out if they were good, and they said they were good, and that we had some doubt about it, but if it was the first judgment, and it was satisfactory, we were willing to take up the judgment, and the bank would buy it."

On that day the sheriff signed a letter, written by the attorney for the Trust Company to the plaintiff's attorneys, that the execution "will be promptly taken care of in due time; the matter is being handled to your best interests." On the 17th he received a telegram from the plaintiff's attorneys asking an immediate answer as to what had been done. The defendant replied upon the 18th that he was sending an assignment of the claim by special delivery. The Trust Company had caused an assignment of the judgment to be prepared, delivered it to the sheriff, and informed him that upon its return it would settle with him. The sheriff mailed the assignment to the attorneys on Saturday, the 18th. On the 21st he received a letter from the attorneys that they would have the assignment executed within the next few days, and send it, or bring it, as they had another matter in Binghamton. Upon the 22d, before the assignment had been sent, the attorney for the Trust Company notified the plaintiff's attorney that it would not take the claim, as it had discovered that the debtors were insolvent, and other actions had been brought, and the Trust Company had all the claims it wanted. The defendant immediately levied, and the petition in bankruptcy was filed two days later.

We find that the attorney for the Trust Company, on or before the

15th, was acting with reference to these matters, and it was evidently acting thereafter under his advice. The court refused to allow the defendant to show when the Trust Company first placed its claim in the hands of its attorney. The defendant's exception to that ruling was well taken. While the Trust Company's attorney had charge of its claim, it is unreasonable to suppose that a levy and sale could have taken place without the Trust Company and the other creditors resorting to bankruptcy proceedings to protect themselves. The Trust Company might possibly overlook the situation and permit a sale to take place; but it is improbable that its attorney, who was investigating the debtors' circumstances, would have permitted it, especially after the 15th, when we find him saying that they doubted the debtors' solvency and were examining into that fact. There is no evidence to indicate that, if a levy had actually been made, a sale could have taken place before a petition in bankruptcy was filed. It seems improbable that the Trust Company and the creditors would have allowed the plaintiff to receive full payment, leaving to them what the plaintiff did not require. Apparently from the time the defendant received the execution there was but one chance of the plaintiff's realizing payment. It was possible that, with a levy imminent, the Trust Company might have been led to take the claim over without a thorough investigation of the circumstances of the debtors. On the 18th it contemplated so doing, but before the assignment was returned changed its position. It is more probable that, if the plaintiff had promptly returned the assignment on Monday, the claim would have been paid on Tuesday, than it is that the levy and sale could have been made at any time before bankruptcy proceedings were instituted, or that the Trust Company would have advanced the money without full investigation. The fact that the Trust Company was apparently willing to take over the claim on the 18th raises some inference that, if forced, it might have done so at an earlier date, and that the plaintiff might have been paid. By like reasoning it may be said they would have discovered the insolvency before they actually paid the money.

The question presented is a mere question of probabilities, approaching somewhat near pure speculation, as to what would have happened if an earlier levy had been imminent. Evidently the debtors could not pay. The question is, What would the Trust Company have done? The question is evidently a close one, and deserves more serious consideration than was given to it by the trial court. The defendant failed to impress upon the court the fact that the debtors were insolvent, and the real issue has not been tried. The question for determination is, if a levy had been promptly made, or was about to be made, whether the Trust Company, without adequate investigation, would have paid the claim, or whether it and the other creditors would have permitted a sale and payment to the plaintiff without filing a petition.

We do not find in the record evidence as to the relations between the Trust Company and the debtors. Unless their relations are made more fully apparent, a jury or a trial justice may be warranted in drawing certain inferences from what is shown and what is not

shown. When the sheriff approached the debtors' they caused him to believe they had the money with the Trust Company. The plaintiff's judgment was recovered May 27, 1914, for $1,389.58. The debtors made an inventory of their stock in trade and property May 23d. The inference is not unreasonable that the pending action, about to ripen into a judgment, had some relation to the making of the inventory at that time. A certain inference may arise that, according to the usual custom between banker and customer, a copy of the inventory was lodged with the Trust Company. A bank ordinarily has quite accurate knowledge as to the financial condition of its customer, engaged in active business. From the inventory it was evident that the debtors had not property sufficient to pay their debts. It is not unreasonable, from what was shown and what was not shown upon the trial, to assume that the Trust Company had knowledge of that fact. The evidence indicates that, from the time this inventory was taken until the petition in bankruptcy was filed, the liabilities of the firm decreased over $2,000 in the ordinary course of business; and it appears that some obligations due the Trust Company were paid within the four months period before petition filed. An inference may arise that the Trust Company, while handling the debtors' money, was seeking for time, and that the reason it gave for its final refusal to take over the claim was an excuse, and not a reason. The debtors, who knew that their property was insufficient to pay their debts, were probably actuated by the hope that through the Trust Company's assistance they might be able to retrieve their fortunes. Perhaps they might have paid the execution, which was pressing them, instead of applying it upon other claims less urgent, if they had been left to themselves. It may be they were in the hands of the Trust Company, and it determined where the current receipts should go. It is not satisfactorily shown that the Trust Company intended to take over the claim; it may be that for some reason time was valuable to it. It is a question of fact, which should be met, whether the Trust Company had full information as to the financial condition of the debtors, and whether in view of the facts there was at any time any reasonable probability that it would pay the claim, or that it and the other creditors would have permitted a sale on execution.

The judgment should therefore be reversed upon the law and the facts, and a new trial granted, with costs to the appellant to abide the event.

LYON, J., concurs.